**Audrey COSTA, Plaintiff,**

v.

**UNITED STATES of America DEPARTMENT OF VETERAN'S AFFAIRS d/b/a Park Davis Veteran's Administration Hospital, Brian S. McLeod, M.D., John C. Lathrop, M.D., Colleen Cavanaugh, M.D., Defendants.**

**Civ. A. No. 92–0482L.**

United States District Court, D. Rhode Island.

March 9, 1994.

---

Brian R. Cunha, Kevin F. Bowen, Brian Cunha & Associates, East Providence, RI, for plaintiff.

Stephanie S. Browne, Asst. U.S. Atty., Providence, RI, for defendants.

### MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

This matter is before the Court on defendant United States of America's motion to

substitute itself for defendants Department of Veterans Affairs ("the Department"), Brian S. McLeod, M.D., John C. Lathrop, M.D., and Colleen Cavanaugh, M.D. pursuant to the provisions of the Federal Tort Claims Act ("FTCA"). For the reasons set forth herein, the motion of the United States is granted in part and denied in part.

## BACKGROUND

The facts, as alleged by plaintiff Audrey Costa in her complaint, are as follows.

On September 7, 1989 plaintiff was admitted to the Davis Park Veterans Administration Hospital[1] ("VA Hospital") to undergo a gynecological surgical procedure known as dilatation and curettage. That procedure was performed the next day by Dr. Brian McLeod and Dr. John Lathrop. Dr. Colleen Cavanaugh participated in the post-operative care and treatment of plaintiff. Shortly after the surgery, plaintiff developed severe abdominal pain. On September 15, Dr. Diane Gruber and Dr. Benjamin Jackson performed abdominal surgery on plaintiff discovering a perforated uterus, perforated bowel and a pelvic wall abscess. At the time of plaintiff's treatment, Dr. McLeod and Dr. Cavanaugh were second and first year residents, respectively, doing a rotation at the VA Hospital.

Plaintiff alleges that her bodily injuries resulted from the negligence of Drs. McLeod and Lathrop. Plaintiff also claims that Dr. Cavanaugh was negligent in failing to diagnose that perforations and the abscess.

The United States argues that the Department of Veterans Affairs, as an executive department, may not be sued directly and that the proper party defendant is the United States. Further, the United States argues that the defendant physicians were employees of the VA Hospital and thus are entitled to immunity under the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. No. 100–694, 102 Stat. 4563 (1988) (amending the Federal Tort Claims Act) and that the United States must be substituted for them in this suit. Plaintiff argues that the defendant physicians were not employees of the VA Hospital, but were independent contractors and are not entitled to immunity and to have the United States substituted for them. The matter was taken under advisement after a hearing before the Court. It is now in order for decision.

### The Department of Veterans Affairs

■ The Department of Veterans Affairs is an executive department of the United States. 38 U.S.C. § 301. This action seeks relief in the form of monetary damages from the Department. The suit, therefore is one against the federal sovereign and cannot be maintained absent an express waiver by Congress. *Massachusetts v. United States Veterans Admin.*, 541 F.2d 119, 123 (1st Cir. 1976). Plaintiff has failed to cite any authority which would modify the sovereign immunity which protects the Department.

The United States has included the Department in its motion to substitute. However, it only cites 28 U.S.C. § 2679(d) as authority for the motion to substitute. Section 2679(d) applies only to the substitution of the United States for individual employees of the government. It provides no authority for the substitution of the United States for the Department. Since the Department is covered by sovereign immunity and the United States has not consented to suit, this Court has no jurisdiction to hear any claims against it. *Federal Deposit Ins. Corp. v. diStefano*, 839 F.Supp. 110, 120 (D.R.I.1993). In any event, the United States is already a defendant in this case. Accordingly, the Court dismisses all claims against defendant Department of Veterans Affairs, *sua sponte*, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure for want of subject matter jurisdiction.

### The Physicians

*Substitution*

■ The United States cites 28 U.S.C. § 2679 as the authority for its motion to substitute. Under that provision, the remedy provided against the United States

---

1. This is the official name of this VA Hospital. It is not Park Davis Veteran's Administration Hospital as was pleaded in the complaint.

through the FTCA is exclusive and the statute precludes suit against an employee whose act or omission gave rise to the claim while that employee was acting within the scope of his or her employment.[2] 28 U.S.C. § 2679(b)(1). The Act provides,

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of [the Federal Tort Claims Act] and all references thereto, and the United States shall be substituted as the party defendant.

Id. § 2679(d)(1). Although the language of the statute seems to the contrary, the certification of the Attorney General is not conclusive. Such a certification is subject to review by the court which may make its own determination of employment status. *Nasuti v. Scannell,* 792 F.2d 264, 266 n. 3 (1st Cir. 1986); *Gogek v. Brown University,* 729 F.Supp. 926, 932–933 (D.R.I.1990) (Torres, J.). Absent a ruling by the court contrary to the Attorney General's certification, that certification is binding on all, including the court itself. *Nasuti v. Scannell,* 906 F.2d 802, 810 (1st Cir.1990). The Attorney General, through Lincoln C. Almond, United States Attorney for the District of Rhode Island, submitted the required certifications for Drs. McLeod, Lathrop, and Cavanaugh on March 3, 1993.[3] Therefore, if the Court determines that Drs. McLeod, Lathrop, and Cavanaugh were employees of the United States and acted within the scope of that employment,

then the United States must be substituted for them.

■ It is clearly established in this Circuit that the law of the state in which the incident occurred is to be used when determining whether an employee acted within the scope of his or her employment. *Nasuti,* 792 F.2d at 266 n. 3; *Gogek,* 729 F.Supp. at 934. Whether an individual is considered an employee, however, is a matter of federal law. *Brooks v. A.R. & S. Enterprises,* 622 F.2d 8, 10 (1st Cir.1980). Plaintiff makes no claim that the defendant physicians failed to act within the scope of their employment, rather, she contends that they were not employees at all at the time in question. For the purposes of the FTCA,

> employee of the government includes officers or employees of any federal agency, members of the military or naval forces of the United States ... and persons acting on behalf of a federal agency in an official capacity, temporary or permanently in the service of the United States, whether with or without compensation.

28 U.S.C. § 2671. The definition of federal agency contains an exclusion for contractors of the United States which has been incorporated into the definition of employee as well. *See Quilico v. Kaplan,* 749 F.2d 480, 482–83 (7th Cir.1984). Thus, this Court will look to federal law to determine whether the physicians in this case were employees of the government or independent contractors.

■ The United States urges the Court to adopt the approach of the Seventh Circuit in *Quilico.* The Court in that case determined that every physician appointed pursuant to 38 U.S.C. § 4114[4] is immune for medical malpractice through 38 U.S.C. § 4116[5].

---

2. There are exceptions to this section, but none of the exceptions are applicable to this case. 28 U.S.C. § 2679(b)(2).

3. A United States Attorney has the authority to issue certifications pursuant to 28 U.S.C. § 2679(d) for the Attorney General through 28 C.F.R. § 15.3(a).

4. Section 4114 has been incorporated into 38 U.S.C. § 7405. These sections permit the appointment of various health care professionals and support staff on a full-time or part-time basis either with or without compensation.

5. Section 4116 has been incorporated into 38 U.S.C. § 7316. The government has not included this section in its argument for substitution. It chose to rely on 28 U.S.C. § 2679 instead. Section 7316 of Title 38 is quite similar to section 2679 of Title 28 save that the former is specifically targeted at Veterans Administration health care professionals while the later applies to United States employees generally. If the physicians in this case are determined to be employees, either authority would be a proper basis for substitution.

*Quilico,* 749 F.2d at 487. It based its decision to interpret the grant of immunity on the priority set forth by Congress to attract top-notch practitioners in order to improve the level of care provided by the Veterans Administration. The Seventh Circuit went on to note that the traditional "strict control" test used to determine employee status was not practical for professionals who are required to use their independent judgement in order to perform their duties. *Id.* at 482–85.

In contrast to the *Quilico* approach, the Tenth Circuit has continued to use the "strict control" test. *Lilly v. Fieldstone,* 876 F.2d 857 (10th Cir.1989). The Court in *Lilly* recognized that the ethical guidelines for certain professionals require that they exercise their independent judgement. The Court noted, however, that physicians may be employees of the government without surrendering their judgement. *Id.* at 859. It stated,

> It is uncontroverted that a physician must have discretion to care for a patient and may not surrender control over certain medical details. Therefore, the "control" test is subject to a doctor's medical and ethical obligations.... What we must do in the case of professionals is determine whether other evidence manifests an intent to make the professional an employee subject to other forms of control which are permissible.

*Id.* In reaching a decision on the employment status of the defendant, Dr. Fieldstone, the Court looked to the relationship between the doctor and the United States Army. It looked at the intent of the parties, the compensation arrangement (who set the physician's fee), which party determined what patients were treated by Dr. Fieldstone, whether the doctor had set hours, and what sort of administrative support the doctor had received.

This Court agrees with the Tenth Circuit approach in *Lilly* because the broad grant of immunity supported by the *Quilico* decision may be over inclusive. The Court recognizes Congress' desire to attract quality health care professionals to veterans hospitals as set forth in the *Quilico* decision. However, those desires are not impeded by the *Lilly* approach. Accordingly, this Court will examine the relationship between the defendant physicians and the VA Hospital to determine their employment status.

*Dr. Lathrop*

According to the deposition submitted by plaintiff, Dr. John Lathrop entered into an agreement with the VA Hospital to attend its clinic on gynecology on a regular basis for a flat fee of $75 per session set by the Hospital. His appointment was pursuant to 38 U.S.C. § 4114. The compensation was paid in a lump sum and Dr. Lathrop paid his own taxes on this payment. Dr. Lathrop was required to see any patient that came to the clinic on the days he was attending. He had neither an office nor a secretary at the Hospital, but given the nature of his duties there, it appears that little administrative support was necessary. When treating patients at the clinic or performing surgery, Dr. Lathrop used the equipment of the Hospital. Although Dr. Lathrop used his own medical judgement when treating patients, he was at all times bound by the Hospital by-laws, policies and procedures.

The undisputed facts in this case indicate that Dr. Lathrop was an employee of the VA Hospital rather than an independent contractor. The Hospital determined his fees and his patient load. He was under the control of the Hospital in all matters other than the exercise of his medical judgment. Even then his medical decisions were guided by the policies of the VA Hospital.

Furthermore, the declaration of the Chief of Surgical Services, Dr. Benjamin Jackson, supports the view that Dr. Lathrop was an employee. In his affidavit, Dr. Jackson stated that he considered appointed consultants such as Dr. Lathrop to be equivalent to full-time employees during the periods they provided care to VA patients. Based on all the evidence the Court concludes that Dr. Lathrop was an employee of the VA Hospital and therefore, the motion for substitution is granted as to him.

*The Residents*

As residents, Dr. McLeod's and Dr. Cavanaugh's positions are different from Dr. Lathrop's. Residents are normally employees of their respective residency programs.

Dr. McLeod's residency was with Brown University while Dr. Cavanaugh's was with the Women & Infants Hospital. As residents, these two doctors would rotate to different hospitals in Rhode Island to gain experience in various areas of medical practice. Plaintiff argues that since Dr. McLeod was under contract to Brown University and Dr. Cavanaugh was under contract to Women & Infants, they were employees of those respective residency programs. That assertion is valid. But plaintiff continues by arguing that those doctors were, therefore, precluded from becoming employees of the VA Hospital. This is where plaintiff's argument goes awry. Despite the biblical advice that no servant can serve two masters, the modern common law tells us otherwise. Under the lent servant doctrine, an employee of one employer can serve another. According to the Restatement, "A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services." Restatement (Second) of Agency § 227 (1958). The same factors are used to determine employment status with respect to the first employer as the second. *Id.* cmt. c. The Restatement further notes that, "If . . . the temporary employer exercises such control over the conduct of the employee as would make the employee his servant were it not for his general employment, the employee as to such act becomes a servant of the temporary employer." *Id.* cmt. d. Thus, if the two residents here are considered employees of the VA Hospital under the *Lilly* approach, their primary employment with their respective residency programs will not prevent them from being entitled to immunity as government employees.

According to the depositions submitted by plaintiff, Drs. McLeod and Cavanaugh were temporarily appointed to the VA Hospital as residents. While there, they had no independent patient load, nor did they have the privilege to admit patients. At all times they were subject to direct supervision and control by attending VA physicians. Neither ever used independent judgement in the treatment of a patient. As residents, they observed and often gave input into patient care, but final decisions were made by either a senior resident or the attending physician. Although Drs. Cavanaugh and McLeod were employees of their respective residency programs, it is clear to the Court that while they served at the VA Hospital they were under the complete control of the Hospital through its employees. Thus, under the lent servant doctrine they are also considered employees of the VA Hospital and thus the United States government.

Since the Court concludes that Dr. Lathrop, Dr. McLeod, and Dr. Cavanaugh were employees of the VA Hospital at the time in question, the certification of the Attorney General is valid. Accordingly, the United States will be substituted for them in this lawsuit pursuant to 28 U.S.C. § 2679(d)(1).

### Conclusion

Defendant's motion to substitute the United States for Drs. Mcleod, Lathrop and Cavanaugh is granted. Defendant's motion to substitute the United States for the Department of Veterans Affairs is denied. The Court dismisses the claims against the Department of Veterans Affairs for want of subject matter jurisdiction.

It Is So Ordered.